UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D

MAY 3 1 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-368-GWU

CHRIS COUCH,                                              PLAINTIFF,

VS.                        **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,              DEFENDANT.

### INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of his applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI). The appeal is currently before the Court on cross-motions

for summary judgment.

### APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.    Is the claimant currently engaged in substantial gainful activity?
      If yes, the claimant is not disabled. If no, proceed to Step 2.
      See 20 CFR 404.1520(b), 416.920(b).

2.    Does the claimant have any medically determinable physical
      or mental impairment(s)? If yes, proceed to Step 3. If no, the
      claimant is not disabled. See 20 CFR 404.1508, 416.908.

3.    Does the claimant have any severe impairment(s)--i.e., any
      impairment(s) significantly limiting the claimant's physical or
      mental ability to do basic work activities? If yes, proceed to

1

Couch

       Step 4. If no, the claimant is not disabled. <u>See</u> 20 CFR 404.1520(c), 404.1521, 416.920(c), 461.921.

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. <u>See</u> 20 CFR 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. <u>See</u> 20 CFR 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. <u>See</u> 20 CFR 404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. <u>See</u> 20 CFR 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

       Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

evidence" is "more than a mere scintilla[; i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. . ." Wright v. Massanari, 321 F.3d 611, 614 (6ᵗʰ Cir. 2003) (quoting Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 535 (6ᵗʰ Cir. 1981). It is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these

3

symptoms. 20 CFR Section 404.1529 (1991). However, in evaluating a claimant's

allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.

1986).

Another issue concerns the effect of proof that an impairment may be

remedied by treatment. The Sixth Circuit has held that such an impairment will not

serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health

and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same

result does not follow if the record is devoid of any evidence that the plaintiff would

have regained his residual capacity for work if he had followed his doctor's

instructions to do something or if the instructions were merely recommendations.

Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106,

1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before

it, despite the plaintiff's claims that he was unable to afford extensive medical work-

ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir.

1987). Further, a failure to seek treatment for a period of time may be a factor to be

4

considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 CFR 416.965(a) and 20 CFR 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and

5

Couch

analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term

6

"framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Chris Couch, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of ongoing polysubstance abuse and dependence, borderline intellectual functioning, possible functional illiteracy versus illiteracy, and possible suboptimal effort/motive for secondary gain. (Tr. 22). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that, absent continuous alcohol abuse and dependence, Mr. Couch retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 21-4). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if he were

7

capable of "light" level exertion, and also had the following non-exertional impairments. (Tr. 21, 23). He: (1) could stand or walk and up to two hours in an eight-hour day (no more than 15 to 30 minutes without interruption); (2) could sit for six hours in an eight-hour day (no more than one hour without interruption); (3) could never crouch, kneel, crawl, or climb ladders, ropes, or scaffolds; (4) could occasionally climb ramps or stairs; (5) was nearly illiterate; and (6) had a poor (defined as "seriously limited not precluded") ability to understand, remember, and carry out complex job instructions. (Tr. 335-9). He retained at least a "limited but satisfactory" ability in all other areas of occupational, performance, and personal-social adjustment. (Id.). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the regional and national economies. (Tr. 342-4).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

While the plaintiff alleged disability only due to bad nerves (Tr. 64), his physical condition was also considered. Medical evidence shows emergency room admissions and 1992 and in 2001 for motor vehicle accidents. In 1992, his left fibula was fractured in an all-terrain vehicle accident (Tr. 139, 149) and in August, 2001, several months before the plaintiff's alleged onset date of January 1, 2002, he was

involved in another ATV accident and was treated for contusions and right shoulder and low back pain. (Tr. 138). However, all x-rays were normal. (Tr. 141-4). Mr. Couch was treated for a right knee injury in November, 2003, with x-ray showing a "bony density...which may represent a fabella"[1] and soft tissue swelling. (Tr. 261-2).

The plaintiff was consultatively examined by Dr. Hughes Helm in November, 2002, and found to have a "right patellar deformity with the lower half of the patella absent[;h]e has increased lateral movement in the left knee and increased anterior movement of the right knee, consistent with a positive right knee drawer sign." (Tr. 245). He was able to do heel, toe, and tandem walking "with difficulty," (Id.) and Dr. Helm concluded that the plaintiff "may have difficulty with standing, moving about, heavy lifting, carrying, and handling objects due to his bilateral knee instability" (Tr. 246).

A state agency physician, Dr. Gary Higgason, reviewed the evidence to this point and concluded that Mr. Couch could perform "medium" level exertion with non-exertional restrictions generally consistent, albeit not identical, with the hypothetical factors selected by the ALJ. (Tr. 252-6). However, the ALJ noted that Dr. Helm was not licensed in the state of Kentucky at the time of the examination, and his opinion was therefore not entitled to controlling weight. The ALJ did give the physician's

---

[1]A fabella is defined as "a sesamoid fibrocartilage occasionally found on the gastrocnemius muscle." Dorland's Illustrated Medical Dictionary, 27th edition, p. 602.

9

report "some probative value" because it was favorable to the claimant, to the extent that it prohibited heavy lifting. (Tr. 18-19).

A second consultative examination was obtained, and in this case, the examiner, Dr. Mark Burns, found no physical restrictions and interpreted x-rays of the left knee and lumbosacral spine to be normal. (Tr. 264-7).

Since Dr. Burns and Dr. Helm were both one-time examiners, the ALJ could reasonably have relied on Dr. Burns even without considering the license status of Dr. Helm. Therefore, the physical restrictions found by the ALJ are essentially gratuitous.

Regarding mental restrictions, the record is replete with evidence of continuous alcohol and marijuana use (e.g. Tr. 138, 160-200, 265, 274), which the plaintiff admitted at the administrative hearing (Tr. 301, 303). A consultative psychological examination by Mary Allen Genthner, M.S., a certified clinical psychologist, produced diagnoses of polysubstance dependence, a pain disorder associated with psychological factors and a general medical condition, a depressive disorder, and mild mental retardation. (Tr. 277). She completed a functional capacity assessment showing serious limitations in many areas, specifically noting that they would be present even in the absence of alcohol use. (Tr. 279-81).

The ALJ sought testimony from a Medical Expert (ME), Dr. Neil Lewis, a psychologist. Dr. Lewis reviewed the record and testified that the plaintiff's primary

10

problem was polysubstance abuse and dependence, but he also had borderline intellectual functioning and most likely was illiterate. (Tr. 317-18). While Ms. Genthner had conducted IQ testing showing scores below 70, which were judged valid (Tr. 275), Dr. Lewis cited school records not available to the examiner showing that the plaintiff obtained IQ scores of 77 and 78 in the seventh and eighth grades (Tr. 110-11). Dr. Lewis noted that such scores were in the borderline range, rather than the range of mild mental retardation. (Tr. 320). In order to meet the Commissioner's Listing of Impairment 12.05C for mental retardation, the plaintiff must show, inter alia, the onset of significantly subaverage general intellectual functioning with deficits in adaptive functioning before age 22. See Foster v. Halter, 279 F.3d 348, 354 (6th Cir. 2001). In view of the school records and the testimony of the ME, substantial evidence supports the finding of the ALJ that the plaintiff did not meet this standard.

Substantial evidence also supports the ALJ's refusal to accept the functional restrictions given by Ms. Genthner in the absence of substance abuse. Dr. Lewis testified that Ms. Genthner's report did not contain sufficient objective evidence to support the presence of psychological impairments apart from borderline intellectual functioning and substance abuse. (Tr. 317-18, 327). He felt that her report described moderate symptoms and, in some cases, mild symptoms. (Tr. 327-8). While the report of a examining source is generally entitled to greater weight than

11

Couch

that of a non-examiner, the nonexaminer's opinion may be accepted if he has had

access the entire record and clearly given the reasons for the difference of opinion.

Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994). In the present case, the ME had

access to the entire record and gave sufficient reasons for the difference of opinion

to support the functional capacity restrictions accepted by the ALJ.

The decision will be affirmed.

This the ____$\mathcal{57}$____ day of May, 2005.

G. WIX UNTHANK
SENIOR JUDGE

12